OPINION
{¶ 1} Defendant-appellant, Matthew Joel Rosales (hereinafter "Rosales"), appeals the judgment of the Union County Court of Common Pleas finding him guilty of one count of possession of crack cocaine.
 {¶ 2} On February 22, 2005, Officer Eric Collier (hereinafter "Officer Collier") stopped a vehicle in Marysville, Ohio, at approximately 1:45 a.m. on suspicion the driver was under the influence of alcohol. Officer Collier noticed one of the four passengers resembled "Matthew Rosales," an individual with outstanding arrest warrants. Officer Collier subsequently requested the assistance of Sergeant Beau Spain (hereinafter "Sergeant Spain") and Officer Katie Archer (hereinafter "Officer Archer"). Ohio State Highway Patrolman Timothy Ehrenborg (hereinafter "Patrolman Ehrenborg") assisted in the stop as well.
 {¶ 3} After determining the driver was not impaired, Officer Collier asked the passenger to identify himself. The passenger responded that his name was "Jessie Rosales." Once the assisting officers arrived, they compared a picture of "Matthew Rosales" with the passenger in the stopped vehicle. Shortly thereafter, the officers asked the passenger to exit the vehicle and arrested him for the outstanding warrants.
 {¶ 4} The passenger removed his jacket as he exited the vehicle. The officers then placed the passenger in the back of a patrol car, retrieved the jacket, and checked it for weapons. The officers took the passenger to the police station where he admitted his true name was "Matthew Rosales."
 {¶ 5} Officer Collier conducted a second examination of the jacket at the station. During the second examination, Officer Collier found a small hole in the lining that was partially sown shut and uncovered several rocks of crack cocaine hidden inside. The officers showed the crack cocaine to Rosales, who denied it was his.
 {¶ 6} On March 4, 2005, a grand jury indicted Rosales for possession of crack cocaine, a violation of R.C. 2925.11(A) and (C)(4)(d) and a felony of the second degree. On May 4, 2005, the case proceeded to a jury trial. The jury found Rosales guilty, and the trial court entered the judgment on the verdict.
 {¶ 7} It is from this decision that Rosales appeals, setting forth four assignments of error for our review.
 ASSIGNMENT OF ERROR NO. 1 It was an abuse of discretion to deny the defendants [sic] request fora continuance of the trial date.
 {¶ 8} In his first assignment of error, Rosales argues the trial court erred in denying his pro se motion for a continuance.[1] For the reasons that follow, we find Rosales' first assignment of error is without merit.
 {¶ 9} The decision to deny a continuance is within the broad discretion of the trial court. State v. Unger (1981), 67 Ohio St.2d 65, 67,423 N.E.2d 1078. Therefore, we will not reverse it absent an abuse of discretion. Id. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 10} When evaluating a motion for a continuance, a trial court should consider the following: (1) the length of the delay requested; (2) whether other continuances have been granted; (3) the inconvenience to the litigants, witnesses, opposing counsel, and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstances that give rise to the request for a continuance; and (6) other relevant factors, depending on the unique facts of each case.Unger, 67 Ohio St.2d at 67-68.
 {¶ 11} In the case sub judice, Rosales contends the trial court should have granted his motion because he wanted time for his family to arrange the funds to hire his own counsel. Rosales also contends a continuance was needed because the driver of the vehicle, Crystal Lester (hereinafter "Lester"), lived in Indiana and was not available to testify on the day of trial.
 {¶ 12} Despite these contentions, several factors weigh in favor of the trial court's decision to deny Rosales' motion. Rosales raised his motion during a pretrial conference, which was held in the jury room, moments before jury selection was to begin. In making the motion, Rosales stated his family would need "at least two weeks" to hire new counsel. The trial court, however, responded that Rosales was represented by a public defender and had ample time to prepare his case.
 {¶ 13} Additionally, Rosales notified the trial court that Lester would be unavailable to testify only two days before trial in a pro se motion entitled "Motion for Waiver of Speedy Trial."[2] Rosales did not specify the reason that Lester could not appear, nor did he set forth the nature of her proposed testimony.
 {¶ 14} We find the timing of the motion to be questionable, and the general uncertainty surrounding the request to be equally problematic. Under the circumstances, a decision to grant the motion moments before trial would have undoubtedly resulted in a substantial inconvenience to all. We must, therefore, conclude that the trial court did not abuse its discretion in denying Rosales' motion.
 {¶ 15} Accordingly, Rosales' first assignment of error is overruled.
 {¶ 16} For clarity of analysis, we consider the second and third assignments of error together.
 ASSIGNMENT OF ERROR NO. 2 There was not sufficient evidence to find the appellant knowinglypossessed cocaine exceeding 10 grams.
 ASSIGNMENT OF ERROR NO. 3 The guilty findings by the jury were against the manifest weight of theevidence (I and II are argued together).
 {¶ 17} In his second and third assignments of error, Rosales asserts that the evidence was both insufficient to support a conviction and that his conviction was against the manifest weight of the evidence. Specifically, Rosales challenges the evidence leading to the conclusion that he knowingly possessed crack cocaine in violation of R.C. 2925.11(A).[3] For the reasons that follow, we find Rosales' second and third assignments of error lack merit.
 {¶ 18} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith (1997),80 Ohio St.3d 89, 684 N.E.2d 668. When reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 19} By contrast, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "`[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 20} R.C. 2925.11(A) states: "No person shall knowingly obtain, possess, or use a controlled substance." Emphasis added. In order to prove a violation of R.C. 2925.11(A), the prosecution need not prove the depth of the defendant's "knowledge." State v. Magg, 3d Dist. No. 5-03-32,2005-Ohio-3761, at ¶ 33. Instead, R.C. 2901.22(B) provides: "[A] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 21} At trial, Officer Collier, Officer Archer, Sergeant Spain, and Patrolman Ehrenborg testified Rosales wore the jacket at all times prior to his arrest. The officers further testified Rosales removed the jacket only when he began to exit the vehicle. After taking the jacket off, Rosales set it in the backseat. However, the officers retrieved the jacket only a few seconds later. The officers all concluded Rosales attempted to "distance himself" from the jacket and that such actions were consistent with the mannerisms of an individual concealing contraband.
 {¶ 22} Officer Collier also testified Rosales asked the officers "to take his coat back to his mom's house." Moreover, Officer Collier testified the outdoor temperature was between twenty and thirty degrees at the time. Consequently, Officer Collier found the act of removing the jacket unusual because Rosales wore only a basketball jersey and t-shirt underneath.
 {¶ 23} Furthermore, Officer Archer and Patrolman Ehrenborg observed Rosales after the other officers removed him from the vehicle and placed him in a patrol car. Both testified that Rosales acted extremely anxious, agitated, and nervous when Officer Collier initially checked the jacket for weapons. Officer Collier and Sergeant Spain testified that Rosales exhibited similar emotions when they showed the crack cocaine to him at the police station.
 {¶ 24} In opposition, Rosales testified on his own behalf. Rosales contradicted the testimony of the arresting officers by stating he borrowed the jacket from one of the passengers before he exited the vehicle. Rosales also testified he took the jacket off to return it to the passenger when the officers told him he was under arrest. Rosales denied knowing the jacket contained crack cocaine and that he asked the officers give the jacket to his mother.
 {¶ 25} Although the evidence against Rosales may have been circumstantial in nature, it is widely accepted that circumstantial and direct evidence have the same probative value. See Jenks,61 Ohio St.3d 259, paragraph one of the syllabus. Viewing the circumstantial evidence in a light most favorable to the prosecution, we do not find Rosales' conviction was based upon insufficient evidence because the evidence presented could convince a rational trier of fact of Rosales' guilt beyond a reasonable doubt.
 {¶ 26} Neither do we find Rosales' conviction was against the manifest weight of the evidence. Based on the evidence introduced at trial, the jury could reasonably infer that Rosales knowingly possessed crack cocaine. Accordingly, we cannot say that the jury clearly lost its way.
 {¶ 27} Rosales' second and third assignments of error are overruled.
 ASSIGNMENT OF ERROR NO. 4 Defendant was denied the effective assistance of counsel.
 {¶ 28} In his fourth assignment of error, Rosales argues he was denied effective assistance of counsel. For the reasons that follow, we find Rosales' fourth assignment of error is without merit.
 {¶ 29} To establish a claim of ineffective assistance of counsel, a defendant must show two components: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. State v. Kole (2001),92 Ohio St.3d 303, 306, 750 N.E.2d 148, citing Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. To warrant reversal, the defendant must show there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. Kole, 92 Ohio St.3d at 308, citing Strickland,466 U.S. at 694; State v. Bradley (1989), 42 Ohio St.3d 136, 142-143,538 N.E.2d 373.
 {¶ 30} In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment.Strickland, 466 U.S. at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. State v. Carter
(1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965. Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. See Bradley, 42 Ohio St.3d at 141, quoting State v. Lytle (1976), 48 Ohio St.2d 391, 396, 358 N.E.2d 623, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135,57 L.Ed.2d 1154.
 {¶ 31} Rosales argues his defense counsel was ineffective because she employed "terrible trial tactics." Rosales points to the following: defense counsel failed to cross-examine the Bureau of Criminal Identification and Investigation (BCII) lab technician who weighed the crack cocaine; defense counsel did not object to the prosecution's references to the basis for Rosales' outstanding warrants; and defense counsel did not "weed out" members of the jury pool who were prejudiced against individuals of Latino ancestry.[4] After reviewing the record, we find defense counsel's trial tactics were neither deficient nor prejudicial to Rosales.
 {¶ 32} To begin, the lab technician testified on direct examination to BCII procedures regarding the handling and testing of crack cocaine, her compliance with those procedures, and that the substance she tested was in fact crack cocaine. Based on this limited testimony, Defense counsel may well have concluded in her "reasonable professional judgment" that there was no reason to challenge the lab technician's account.
 {¶ 33} Similarly, we find unpersuasive Rosales' argument that defense counsel's failure to object rendered her assistance ineffective. Assuming, arguendo, defense counsel's failure to object rendered her performance deficient, Rosales voluntarily testified on direct examination to the existence of, and basis for, his outstanding warrants. Thus, we find no reasonable probability that, but for defense counsel's failure to object, the results of Rosales' trial would have been different.
 {¶ 34} Lastly, we find no merit in Rosales' contention that defense counsel's performance during voir dire was deficient. Defense counsel specifically inquired into whether any member of the jury panel could not be fair and impartial where the defendant was of Latino ancestry. No member of the jury panel responded in the affirmative, and the trial court ultimately determined it impaneled a fair and impartial jury.
 {¶ 35} In addition to Rosales' argument regarding defense counsel's trial tactics, Rosales also argues his counsel was ineffective because she was "unsupportive" of his pro se motions and made negative connotations about him to the trial court.[5] Rosales maintains that defense counsel made only a "half-hearted" motion for acquittal pursuant to Crim.R. 29, and following a verbal altercation between Rosales and the trial court during the pretrial conference, stated: "Now you know what I'm going through? This is what I've been going through."
 {¶ 36} We find Rosales' arguments unavailing. Rosales has failed to establish exactly how defense counsel was "unsupportive." Further, a review of the trial proceedings evinces defense counsel made an oral motion for acquittal on the record, and the trial court denied it. Finally, although defense counsel's statement to the trial court during the pretrial conference may have been inappropriate, the record reveals defense counsel made no "negative connotations" at any other point throughout the pretrial or trial proceedings.
 {¶ 37} Rosales' additional arguments do not establish defense counsel's performance was unreasonable under the circumstances or how the outcome of the trial would have been different but for her actions. Therefore, Rosales has failed to meet his burden in proving he was denied effective assistance of counsel on these alternative grounds.
 {¶ 38} Accordingly, Rosales' fourth assignment of error is overruled.
 {¶ 39} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
 Judgment affirmed. Bryant and Shaw, JJ., concur.
[1] As discussed infra, a public defender represented Rosales throughout the pretrial and trial proceedings. However, Rosales made several motions on his own accord.
[2] Rosales failed to identify Lester as the witness in his pro se "Motion for Waiver of Speedy Trial." However, Rosales' counsel had filed a witness list identifying Lester as Rosales' only witness. Since Rosales' counsel filed the witness list before Rosales made the "Motion for Waiver of Speedy Trial," we presume the trial court had notice that Rosales referenced Lester.
[3] We note that Rosales does not allege in his brief that he did notpossess the crack cocaine. Rather, Rosales challenges that he did notknow the crack cocaine was in the jacket.
[4] Rosales filed a pro se motion seeking a change of venue prior to trial. In his motion, Rosales argued that a trial held in Union County would be unfair because of his ethnicity. The trial court denied the motion.
[5] We note Rosales filed a pro se motion prior to trial that was entitled "Motion for Competency and Ineffective Assistance of Council [sic]." In the motion, Rosales sought a change of counsel and argued his counsel "violated his rights" by accusing him of lying and suggesting that he enter into a plea agreement. The trial court denied the motion.