[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 303.]

THE STATE OF OHIO, APPELLEE, *v*. KOLE, APPELLANT.

[Cite as *State v. Kole*, 2001-Ohio-191.]

*Criminal law—Bounty hunter enters home of third party unannounced and without permission to apprehend a fugitive—Conviction for abduction, burglary, and having weapon while under disability, with firearm specifications—Ineffective assistance of counsel as to abduction and burglary counts, in conjunction with issue of whether counsel was ineffective for failing to raise issue of firearm operability and of applicability of gun specifications, combine to create such prejudice as to require reversal and remand of all convictions and specifications.*

(No. 00-1479—Submitted April 3, 2001—Decided July 18, 2001.)

APPEAL from the Court of Appeals for Lorain County, No. 98CA007116.

_____

LUNDBERG STRATTON, J.

{¶ 1} On May 31, 1996, A-B-C Bail Bonds ("A-B-C") contracted with fugitive recovery agent Michael Kole, defendant-appellant, to apprehend Cecil Cobb, who had absconded after A-B-C had posted $2,500 for his release pending trial on a robbery charge. Cobb had been released from jail a few days earlier after serving time on an unrelated matter and had been living on the street.

{¶ 2} On May 31, 1996, Cobb stopped by the apartment of his stepbrother, William McAuliffe, located at 325 Columbus Street, in Elyria. After speaking briefly with McAuliffe, Cobb left the apartment because he had been offered some work for the day. A-B-C received an anonymous telephone call stating that Cobb could be found at the Columbus Street address.

{¶ 3} Defendant and his partner, Jose Rosario, proceeded to the address given to them by A-B-C and at approximately three o'clock in the afternoon entered

McAuliffe's apartment without permission, and with guns drawn. They found a man lying on a couch in the living room and demanded to know his identity. Defendant and Rosario determined that the man was not Cobb, but his stepbrother, McAuliffe, instead. Defendant and Rosario inquired as to the whereabouts of Cobb while they searched the apartment.

{¶ 4} Responding to a call, officers from the Elyria Police Department arrived at the apartment. The police ascertained the identities of McAuliffe, defendant, and Rosario. Upon discovering the purpose of defendant and Rosario's presence, the officers, defendant, and Rosario departed. Later that evening, defendant and Rosario staked out McAuliffe's apartment, and they apprehended Cobb.

{¶ 5} Defendant was later indicted by the Lorain County Grand Jury on one count of abduction in violation of R.C. 2905.02(A)(2), one count of burglary in violation of R.C. 2911.12(A)(3), and one count of having a weapon while under a disability in violation of R.C. 2923.13(A)(2), with prior-offense-of-violence and firearm specifications with each charge. A jury convicted defendant of all charges and all firearm specifications, and the trial court found him guilty of all prior-offense-of-violence specifications. The Court of Appeals for Lorain County affirmed the convictions and sentence.

{¶ 6} The cause is now before this court upon the allowance of a discretionary appeal.

{¶ 7} This case was presented for this court to address a variety of issues, many of which relate to the age-old practice of bounty hunting or "fugitive recovery" in today's parlance. In particular, we have been asked to determine whether Ohio law permits a bounty hunter to enter the home of a third party unannounced and without permission in order to locate and apprehend a fugitive. Defendant urges this court to consider whether there exists an absolute statutory defense to any and all criminal charges arising out of the act of recovering a

2

fugitive. We find that defendant's counsel at the trial and court of appeals levels failed to present what might have been a crucial statutory defense available to the defendant and thus rendered the defendant ineffective assistance of counsel. Because we are remanding for a new trial, we must save these questions for another day.

{¶ 8} In both courts below, defense counsel instead argued that defendant, in apprehending a fugitive for a bail bonding agent, enjoyed a common-law privilege to enter McAuliffe's apartment and use whatever force was necessary to apprehend Cobb. Defendant drew this argument from a United States Supreme Court case in which the court held that "[w]hen bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another State; may arrest him on the Sabbath; and if necessary, *may break and enter his house for that purpose*. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner. In 6 Modern it is said: 'The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge.' " (Emphasis added.) *Taylor v. Taintor* (1872), 83 U.S. (16 Wall.) 366, 371-372, 21 L.Ed. 287, 290.

{¶ 9} Thus, both throughout pretrial motions to dismiss and at trial, with regard to the abduction and burglary charges, defense counsel consistently argued that *Taylor* provided an absolute privilege for defendant to enter the home of a third party, McAuliffe, to recover the fugitive. "Privilege" is defined for the purpose of the Revised Code as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12). On the other hand, the state

argued that although *Taylor* permits a bounty hunter to pursue the fugitive into his or her own home, the bounty hunter is not permitted to pursue the fugitive into the home of another.

{¶ 10} The court of appeals held that "[w]hile there is an absence of controlling Ohio authority on the subject, 'the decided trend is that the bondsman lacks the broad authority over a third person that he possesses with respect to the fugitive who has violated the conditions of his bail. The pivotal difference is that the defendant who agreed to the terms of the bail bond has contracted away rights that he would otherwise possess vis-à-vis the bondsman, whereas a third person has not contracted away any rights,' " quoting *Herd v. Maryland* (1999), 125 Md.App. 77, 115, 724 A.2d 693, 712.

{¶ 11} Ultimately, the court of appeals concluded that "bail bondsmen have broad authority to use reasonable and necessary force against fugitives, including, where reasonable, a forced entry into the home of the fugitive. However, this broad authority does not extend to infringe upon third parties who are not parties to the bail contract." The court continued, "Assuming, *arguendo*, that Kole had the authority to use reasonable force to enter upon a third party's dwelling to apprehend a fugitive, this Court concludes that Kole's use of force was unreasonable on the facts of this particular case." Accordingly, the court of appeals affirmed the convictions.

{¶ 12} Defendant received new counsel for purposes of an appeal to this court. In preparing the appeal to this court, new counsel discovered a statute that, had it been raised at trial, is reasonably probable to have provided an affirmative defense to the abduction and burglary charges of which defendant stood accused.

{¶ 13} R.C. 2713.22 provides: "For the purpose of surrendering the defendant, *the bail may arrest him at any time or place* before he is finally charged, or, by a written authority indorsed on a certified copy of the bond, may empower any person of suitable age and discretion to do so." (Emphasis added.) Therefore,

defendant urges this court to find that he received ineffective assistance of counsel at trial and on appeal with regard to the abduction and burglary convictions. We agree that the failure to present this statute to the jury constituted ineffective assistance of counsel.

{¶ 14} The United States Supreme Court has held that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington* (1984), 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692-693. In making such a determination, there are two components. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

{¶ 15} We bear in mind that our scrutiny of counsel's performance must be highly deferential. *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. But important to our decision today is the admonition that counsel "has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.* at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

{¶ 16} In establishing whether counsel's performance was deficient, the defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. While counsel clearly raised the common-law privilege, we find that failing to raise a statutory defense that provided that "the bail may arrest * * * *at any time or place"* amounted to deficient performance by defense counsel at trial and that failing to raise the issue to the court of appeals constituted deficient appellate assistance. While *Taylor* speaks to entering the house of the fugitive to recover him, R.C. 2713.22 speaks to arresting the fugitive *at any time or place*.

**{¶ 17}** Clearly there is no rationale for failing to cite this statute to the trial and appellate courts. Thus, it cannot be said that this omission was the result of a trial tactic, for this statute may have insulated the defendant from criminal liability. Rather, defense counsel appears to have missed this statute in counsel's investigation and research of the law. Even the prosecutor admits being unaware of the statute. Moreover, the statute is not mentioned in the appellate decision. In assessing counsel's performance, we conclude that "in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

**{¶ 18}** This omission, even though professionally unreasonable under the dictates of *Strickland*, does not warrant setting aside defendant's convictions unless the error had an effect on the judgment. *Id.* at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 696. The second prong of *Strickland* requires that "the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. In fact, "[t]o show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.

**{¶ 19}** On its face, the statute could have established a privilege for two of the charges against defendant in this case: burglary and abduction. For example, at the hearing on the motion to dismiss, the focus was on whether Cobb *resided* at the 325 Columbus Street address in Elyria. R.C. 2713.22 would have given the court a statutory defense to consider that makes irrelevant the issue of Cobb's residency

and instead would have focused on the plain language of the statute, the right to arrest the fugitive "at any time or place."

{¶ 20} Moreover, at trial, although defense counsel submitted alternate proposed instructions, the trial court did not accept them, and defendant did not object to the instructions given. The instructions given focused on defendant's unlawful intent rather than on whether there existed a potential absolute statutory defense. Although the instructions incorporate the defense of privilege, they obviously did not refer to the language of R.C. 2713.22.

{¶ 21} For example, in the instruction for abduction, the court stated: "If you find beyond a reasonable doubt that Bill McAuliffe, who was a third party, intentionally impeded the Defendant's lawful arrest or recapture of Cecil Cobb, you will then consider whether the amount of force used by the Defendant in this case was necessary, was unnecessary or unreasonable under the circumstances. If you determine beyond a reasonable doubt the amount of force used by the Defendant in this case was unnecessary or unreasonable under the circumstances, then you must also find that the Defendant acted without privilege to do so. If you determine that the amount of force used by the Defendant in this case was necessary or reasonable under the circumstances, then you must find that the Defendant acted with privilege to do so."

{¶ 22} Further, the burglary instruction included the following statement: "In this case, it is undisputed that the Defendant was working as a bounty hunter during the incidents charged in this Indictment. Bounty hunters and/or bail bondsmen occupy a special position in law which includes the right to enter the residence of a suspect in order to take that suspect into custody. *Bounty hunters are not authorized to forcibly enter private dwellings of a third party to arrest the suspect, the suspect in this case being Cecil Cobb*.

{¶ 23} "In this case you must first determine whether or not Cecil Cobb was a permanent or temporary resident at 325 Columbus Street on May 31st, 1996. If

you find that Cecil Cobb was a permanent or temporary resident on May the 31st, 1996, then the Defendant had a right to search for him at that place. If you find that Cecil Cobb was not a permanent or temporary resident, then the Defendant had no privilege to search the premises at 325 Columbus Street."

{¶ 24} In determining prejudice, the *Strickland* test requires the defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Further, we are reminded that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

{¶ 25} Clearly, in light of R.C. 2713.22, the jury instructions were not a proper statement of the law relating to a bail bonding agent entering the home of a third party to recover a fugitive. The jury could have reached a different outcome had the language of R.C. 2713.22 been used in the jury instruction instead of the instructions given. We hold that counsel's failure to present the jury with a R.C. 2713.22 statutory defense to the charges of abduction and burglary established a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Because we conclude that defendant did not receive the counsel guaranteed him by the Sixth Amendment and that this case must be remanded for a new trial, the fugitive recovery issues presented in this appeal are not yet ripe for review. We must wait until these issues and this statute are properly tested in a trial setting and reviewed on appeal before we may consider them in this court.

{¶ 26} Defendant also appeals the convictions for having a weapon while under disability and the firearm specifications. Defendant alleges that these convictions should be reversed due to the state's failure to prove operability of the firearm he possessed during his pursuit of Cobb. Defendant raises the issue of operability in this court for the first time. Nor did either trial or appellate counsel

attack the issue of whether a gun specification can attach to a charge of weapons under disability, an issue not yet addressed by this court.[1]

{¶ 27} We hold that the ineffective assistance as to the abduction and burglary counts, in conjunction with the issue of whether counsel was ineffective in failing to raise the issue of firearm operability and of the applicability of the gun specifications, combine to create such prejudice to the defendant as to require reversal and remand of all convictions and specifications.

{¶ 28} Accordingly, we reverse the judgment of the court of appeals and remand the cause to the trial court for a new trial.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK, J., dissents.

_____

**COOK, J., dissenting.**

{¶ 29} At first, the majority purports to "save * * * for another day" the question of whether R.C. 2713.22 permits a bounty hunter to enter the home of a third party unannounced and without permission in order to locate and apprehend a fugitive. Yet the majority eventually decides that "[o]n its face, [R.C. 2713.22] could have established a privilege for two of the charges against [the] defendant in this case" and that Kole's trial counsel was thus ineffective for failing to raise this statute as an affirmative defense.

{¶ 30} With all due respect, I suggest that the majority cannot have it both ways. A reasonable probability of a different trial outcome would not exist here

_____

1. Although this court has held that "[t]he crimes of carrying a concealed weapon, R.C. 2923.12, and having weapons while under disability, R.C. 2923.13, are not allied offenses of similar import under R.C. 2941.25(A), and may be committed separately and with a separate animus under R.C. 2941.25(B)," *State v. Rice* (1982), 69 Ohio St.2d 422, 23 O.O.3d 374, 433 N.E.2d 175, syllabus, we have not addressed the issue of whether enhancing the offense of having a weapon while under a disability with a firearm specification, which carries a mandatory prison term, violates the Double Jeopardy Clauses of the Ohio and United States Constitutions.

per *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, unless R.C. 2713.22 actually provided Kole a valid statutory privilege or defense for the jury to consider. Put another way, the majority cannot decide that Kole's trial counsel was constitutionally ineffective for her failure to raise the statute without also implicitly deciding that the statute provided Kole a legitimate defense.

{¶ 31} Today's majority deems trial counsel's performance constitutionally deficient based on her failure to raise a statute that, to the best of my knowledge, has never been cited in any opinion published by any court in this state. Even if I were to assume, for the sake of argument, that trial counsel performed deficiently by failing to raise the statute and that Kole thus satisfied *Strickland*'s first prong, I could go no further. To be of any assistance to Kole, R.C. 2713.22 must be interpreted to endow bounty hunters with greater rights to enter the private dwellings of nonconsenting third parties than are possessed by our state's law enforcement officers. See *Steagald v. United States* (1981), 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (holding that, absent exigent circumstances or consent, law enforcement officers may *not* constitutionally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant). Neither *Strickland* nor the Sixth Amendment requires trial counsel, or reviewing courts for that matter, to entertain such improbabilities. See *Murray v. Carrier* (1986), 477 U.S. 478, 486, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397, 407 (" 'the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable * * * claim,' " quoting *Engle v. Isaac* [1982], 456 U.S. 107, 133-134, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783, 804). Thus, I respectfully dissent.

_____

*Gregory A. White*, Lorain County Prosecuting Attorney, and *Lisa A. Locke Graves*, Assistant Prosecuting Attorney, for appellee.

*David H. Bodiker*, State Public Defender, and *James R. Foley*, Assistant State Public Defender, for appellant.

*David M. Gormley*, State Solicitor, and *Norman E. Plate*, Assistant Solicitor, urging affirmance for *amicus curiae,* Attorney General of Ohio.

_____