JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Leonardo Jackson ("defendant") appeals from the trial court's judgment entered on the jury verdict convicting him of robbery. After reviewing the record, we affirm.
 {¶ 2} A Cuyahoga County Grand Jury indicted defendant on two counts: aggravated robbery in violation of R.C. 2911.01, a felony of the first degree; and robbery in violation of R.C. 2911.02, a felony of the second degree. Both counts included a firearm specification. Shortly after defendant's arraignment, defense counsel filed a number of motions, including a one-page motion to suppress evidence. (R. 3). The terse motion to suppress lacked specificity and did not seek to suppress the victim's identification of the defendant or otherwise raise any issue concerning the identification procedures. Further, the defense did not request an evidentiary hearing on that particular motion. The operative facts of this case indicate that around 11:00 p.m. on June 7, 2001, a man accosted a female as she approached her apartment located near the streets of Van Aken and Ashby in Shaker Heights. The woman testified that she observed a man nearby as she approached the entrance. Shortly thereafter, that man grabbed her, claimed he had a gun, and stole her purse. The woman continued to observe the assailant as he left the scene. She testified that he looked back at her as she was screaming for help and that she made a conscious effort to remember "as much descriptive details as possible." (Tr. 292).
 {¶ 3} An apartment resident called the police who responded within a few minutes. Some officers went to the scene while others set up a perimeter in the area in an effort to apprehend the assailant. The woman described her assailant as between 5'9" and 5'10" tall, medium build, black man, wearing a dark baseball hat, lighter shirt, and darker pants. The officers at the scene broadcast the suspect's description.
 {¶ 4} The woman also informed police that her wallet contained three newer twenty dollar bills, one ten dollar bill, one five dollar bill, and maybe a few ones and also some Italian coins. She remembered the exact amount due to the fact that she was aware of how much money she had left from a recent trip and because she spent some of the money that evening at a coffee shop.
 {¶ 5} One of the officers responded to a location on Kinsman. He went there based on his experience of persons using cut-throughs to enter Cleveland from Shaker Heights. That officer first noticed defendant within a minute after receiving the report of the robbery and about the time of the broadcast of the suspect's description. Based on his observations, the officer believed that defendant arrived on Kinsman via the cut-through. Defendant was perspiring despite the cold weather. The officer confirmed the description and believed that defendant matched it. The officer observed defendant place a black baseball hat into his pocket.
 {¶ 6} The officer radioed for assistance and defendant was stopped by two other officers with a K-9 dog present. One of the officers inquired as to the recovery of the purse to which defendant allegedly responded, "I didn't take no purse from that girl. Its not my M.O." (Tr. 148). The female victim was not present when defendant made this comment and the officers testified that they had not mentioned how or where the purse was stolen.
 {¶ 7} Defendant cooperated with the officers and told them he was on his way to his girlfriend's house on 151st Street from his home on Normandy. He also described his route of travel which included Van Aken. There is testimony indicating that the defendant's route was rather circuitous given the location of his destination from his house.
 {¶ 8} The officers further recovered money from defendant's person after obtaining his consent. He explained that he had just been paid $182 that day, that he gave some money to his mother, some to his girlfriend, and had spent some himself.
 {¶ 9} The officers recovered three newer twenty dollar bills, one ten dollar bill, one five dollar bill, and three one dollar bills from defendant's pocket. Subsequent investigation confirmed that defendant was paid that day and that he had cashed his paycheck.
 {¶ 10} One officer backtracked in the area with his K-9 partner. Four or five houses down, the dog picked up a scent patch on the grass. The dog followed the scent to the cut-through where the woman's purse was recovered. Despite further search, the officers did not locate a weapon. There is nothing in the record directly linking the scent followed by the dog to the defendant.
 {¶ 11} Shortly after stopping defendant, the officers transported the woman to the location where defendant was stopped for identification purposes. She testified that she remained in the police vehicle, that she observed defendant through a plastic divider in the vehicle and from an approximate distance of 40 feet and that defendant was illuminated by bright lights. Under these circumstances, she indicated that she was 80 to 90 percent certain that defendant was the assailant. This percentage of certainty was repeatedly and consistently corroborated by several of the police officer witnesses. The officers felt that the woman had made a reliable identification under the totality of the circumstances and arrested defendant.
 {¶ 12} On cross-examination, the woman explained that the identification was not only influenced by the location but also by the fact that defendant matched "the height, build, facial scrub, everything" of her assailant. (Tr. 295).
 {¶ 13} At the time of his arrest, defendant wore a sweatshirt that was dark on the outside and light on the inside. The description of the suspect was for darker pants, lighter shirt. There is extensive cross-examination on this issue and the articles of clothing were introduced to the jury as exhibits.
 {¶ 14} After his arrest, the officers conducted further interrogation of the defendant. At that point, he deviated from the original version he gave them about his route of travel and specifically denied being on Van Aken that evening and denied being near the cut-through where the purse was recovered.
 {¶ 15} The next day, the defendant told yet another version of events first claiming he was on his way to his girlfriend's house from his house. Then, when questioned as to why he did not take a more direct route, he stated that he was on a walk when he decided to go to his girlfriend's house.
 {¶ 16} At trial, the State presented the testimony of five police officers, two detectives, and the victim. One of the detective witnesses testified that he was unable to obtain any identifying fingerprints from either the currency or the purse. Several officers testified to the effect that they each independently determined that defendant matched the suspect's description which was further corroborated by the victim's testimony. The defense offered no witnesses.
 {¶ 17} Based on the foregoing, the jury returned a verdict finding defendant not guilty of aggravated robbery, not guilty of the firearm specifications, but guilty of robbery, a felony of the second degree. Defendant's appeal assigns five errors for our review which we address below and together where appropriate for purposes of discussion.
 {¶ 18} "III. Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article 1, of the Ohio Constitution and theSixth and Fourteenth Amendments to the United States Constitution when counsel failed to request a hearing on the motion to suppress with regard to the improper identification procedures."
 {¶ 19} It is well-settled that in order to establish a claim of ineffective assistance of counsel, defendant must show two components: (1) "`that counsel's performance was deficient'"; and (2) "`the defendant must show that the deficient performance prejudiced the defense.'" Statev. Kole (2001), 92 Ohio St.3d 303, 306, quoting Strickland v. Washington
(1984), 466 U.S. 668, 687. However, appellate review of counsel's performance "must be highly deferential." Id.
 {¶ 20} This Court has previously acknowledged that "[i]n order to show that his lawyers' conduct was unreasonable, he must overcome the presumption that they provided competent representation, and show that their actions were not trial strategies prompted by `reasonable professional judgment.'" State v. Freeman (Dec. 14, 2000), Cuyahoga App. No. 76906, unreported, citing Strickland, supra.
 {¶ 21} The record does not support defendant's contention that his attorney rendered ineffective assistance by not requesting a evidentiary hearing on the motion to suppress. Defendant's argument focuses on the belief that the identification procedure was unduly suggestive resulting in an unreliable identification of defendant as the assailant in violation of due process. The State counters that because there exists no grounds for the suppression of the evidence, counsel was not ineffective in failing to pursue the motion to suppress.
 {¶ 22} This Court has on previous occasions addressed similar due process challenges to "show-up identifications" and noted that "the United States Supreme Court held that even though a show-up identification, involving the exhibition of just one individual to an eyewitness, as opposed to a lineup, is suggestive, it may, nevertheless, not offend constitutional due process if, under the totality of the circumstances, the identification is reliable." State v. Peterson, Cuyahoga App. No. 80606, 2002 Ohio 4165, ¶ 9, citing State v. Martin (1998),127 Ohio App.3d 272, 275, citing Neil v. Biggers (1972), 409 U.S. 188.
 {¶ 23} In this regard, the Supreme Court instructs us to consider the following factors with regard to potential misidentification: "1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of the witness' description of the criminal; 4) the level of certainty demonstrated by the witness at the confrontation; and 5) the length of time between the crime and the confrontation. The central question is whether, under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive." Id.
 {¶ 24} Applying the requisite factors, we find that the identification procedures did not offend constitutional due process under the totality of the circumstances in this case. With regard to the first two factors, the victim testified that she viewed her assailant as he left the scene of the crime with the specific intent to remember as much descriptive detail as possible.
 {¶ 25} Assessing the third factor, the victim gave a description of the suspect matching that of defendant who was stopped in the general area within minutes of the crime. At that time, the defendant was sweating despite the cold weather, he originally admitted to being on the street where the crime took place, and he allegedly knew that a purse was stolen from a girl. Also, the officers recovered from the defendant's pocket the exact amount of money in the identical denominations that the victim said she had in her purse.
 {¶ 26} As to the fourth and fifth factors, it is well established in the record that the victim maintained a certainty between 80 and 90 percent that defendant was her assailant. It is equally settled in the record that only a matter of minutes had elapsed between the commission of the crime and defendant's apprehension. Even if we were to determine that the identification procedure was suggestive, the totality of the circumstances indicates that the identification was reliable nonetheless. Thus, defense counsel was not ineffective for failing to request an evidentiary hearing on the motion to suppress. This assignment of error is overruled.
 {¶ 27} "I. The trial court erred in denying appellant's motion for acquittal as to the charge of robbery when the State failed to present sufficient evidence that appellant committed this crime.
 {¶ 28} "II. Appellant's conviction is against the manifest weight of the evidence."
 {¶ 29} Under these errors, the defendant challenges the adequacy of the evidence presented at trial. Specifically, defendant claims that the State failed to present sufficient evidence to support his conviction for robbery and that his conviction is against the manifest weight of the evidence. We disagree and find that an evaluation of the weight of the evidence is dispositive of both of these errors.
 {¶ 30} The sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues.State v. Thompkins (1997), 78 Ohio St.3d 380, 386. When reviewing the sufficiency of the evidence, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 31} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. Id. at 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 32} Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, if we determine that the weight of the evidence supports the conviction, that will necessarily dispose of the issue of sufficiency. State v. Roberts
(Sept. 17, 1997) Lorain App. No. 96CA006462, unreported at 4.
 {¶ 33} The crux of defendant's claim here is that the evidence fails to establish that he is the man who committed the crime. As set forth above, the victim identified the defendant as her assailant with a certainty between eighty and ninety percent. The defendant was stopped in the area of the crime and matched the description of the suspect. He had the exact amount of money on his person that the victim reported having in her purse. The record contains evidence that defendant gave differing versions as to his route of travel prior to being stopped by the officers that night. Employing the requisite standard, we find that the weight of the evidence supports the jury's verdict that defendant was guilty of the charge of robbery. These assignments of error are overruled.
 {¶ 34} "IV. Appellant was denied a fair trial when the trial court erred by not permitting cross-examination by trial counsel on material inconsistencies between the alleged victim's testimony and her prior statement in violation of Crim.R. 16 and appellant's rights under ArticleI, Section 16 of the Ohio Constitution and the Sixth andFourteenth Amendment to the United States Constitution."
 {¶ 35} Crim.R. 16(B)(1)(g) provides in pertinent part as follows: "(g) In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 {¶ 36} "* * *
 {¶ 37} "If the court determines that inconsistencies do not exist, the statement shall not be given to the defense attorney and shall not be permitted to cross-examine or comment thereon."
 {¶ 38} At the conclusion of the victim's direct examination, the court conducted an in camera inspection of the victim's statement at defendant's request. (Tr. 309). Part of the victim's statement that identified the defendant as the assailant provided "I was 80-90% sure that was him. The build fit, he seemed to be the man I had seen earlier." (Court's Ex. B). The defense contended that this was inconsistent with the victim's testimony. (Tr. 309-311). The court determined that the victim's statement was not inconsistent with her trial testimony. This court has held that "it is for the trial court to determine whether inconsistencies are `substantial.'" Cleveland v. Wirtz (July 29, 1993), Cuyahoga App. No. 62751, citing State v. White (1968), 15 Ohio St.2d 146. Having reviewed the statement as well as the record, we find that the trial court did not err in this regard. This assignment of error is overruled.
 {¶ 39} "V. Appellant was denied a fair trial when the trial court improperly interfered by urging and allowing the assistant prosecuting attorney to conduct further questioning of the alleged victim after the assistant prosecuting attorney indicated that he had no further questions."
 {¶ 40} The defendant presents us with no authority and/or citation in support of this assigned error as required by App.R. 16(D). Even if appellant had complied with App.R. 16, we find that any error committed by the trial court in this regard was harmless error since defendant had full opportunity to cross-examine this witness and was not otherwise prejudiced. See Crim.R. 52(a). Accordingly, this assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and ANN DYKE, J., CONCUR.