OPINION *Page 2 
{¶ 1} Defendant-appellant, Jeffrey Lunguy (hereinafter "Lunguy"), appeals the Allen County Court of Common Pleas judgment of conviction. For reasons that follow, we affirm.
 {¶ 2} Lunguy operated a cellular phone business in Lima, Ohio called Diamond Communications. (Oct. 18, 2007 Tr. at 39). Sometime between 1997 and 2000, one of Lunguy's customers brought Paul Oehlhof (hereinafter "Oehlhof) into the store to purchase a cellular services contract. (Id.); (Oct. 11, 2007 Tr. at 4-5). During this encounter, Lunguy asked Oehlhof if he or any of his co-workers at the Lima Ford engine plant had some money and would be interested in selling cellular phone accessories on E-bay. (Oct. 11, 2007 Tr. at 5). Oehlhof agreed to loan Lunguy a large sum of money to invest into the proposed business venture; however, Lunguy never repaid the money he borrowed. (Oct. 11, 2007 Tr. at 6-8). As a result of this and other disagreements, the business venture dissolved in 2004. (Oct. 18, 2007 Tr. at 92-93).
 {¶ 3} Beginning in 2004, Oehlhof began receiving creditor calls seeking payments on charges he owed on a merchant account. (Oct. 11, 2007 Tr. at 8). Oehlhof became suspicious because he did not have any merchant accounts and began to investigate further. (Id.). Oehlhof discovered that the business associated with the account was "Airwave Consultants," which he recognized as a business *Page 3 
owned by Lunguy. (Id.). Oehlhof also discovered that his name was on the account and that a signature purporting to be his was on the application to open the account, even though he never signed or authorized his signature be signed on the application. (Id. at 8-9, 14-15); (State's Ex. 1).
 {¶ 4} Oehlhof, suspecting foul play, contacted the Lima Police Department. (Oct. 11, 2007 Tr. at 11). After further investigation, it was discovered that Lunguy filed the application for the merchant account in February 2002 for his business. (Id. at 79). Since he had questionable credit, Lunguy signed Oehlhof s name as a co-signor for the account. (Id. at 80-81).
 {¶ 5} On August 30, 2006, the Allen County Grand Jury indicted Lunguy on one count of uttering in violation of R.C. 2913.31(A)(3) 
(C)(1)(A)(1), a fourth degree felony. On November 8, 2006, Lunguy entered a written plea of not guilty. An amended indictment was filed on January 11, 2007 to correct an error in the originally filed indictment relating to the year of the crime's commission. Lunguy filed a subsequent written plea of not guilty on January 17, 2007.
 {¶ 6} On March 22, 2007, the State filed a second amendment to the indictment correcting the charged revised code section, which the trial court granted. On March 27, 2007, the State requested a trial continuance due to the victim's unavailability, which the trial court granted. On June 5, 2007, the State again requested a trial continuance for the Bureau of Criminal Investigations (BCI) to conduct additional testing on documents provided by Lunguy. *Page 4 
 {¶ 7} On June 12, 2007, the trial court conducted a hearing wherein the State requested a further continuance for BCI to analyze the original documents in Lunguy's possession. The trial court granted the continuance and ordered that Lunguy turn over the original documents for examination.
 {¶ 8} On August 30, 2007, Lunguy waived his rights to a jury trial and a speedy trial, which resulted in a bench trial scheduled for October 5, 2007. On September 27, 2007, Lunguy filed a continuance request due to a scheduling conflict, which was granted.
 {¶ 9} On October 11, 2007, the matter came for bench trial and concluded on October 18, 2007. At the close of the prosecution's case-in-chief, Lunguy tendered a Crim. R. 29 motion for acquittal. The trial court found that the State failed to prove that the amount of services lost in this case exceeded $5,000; and therefore, granted Lunguy's motion with respect to the fourth degree felony enhancement. However, the trial court denied Lunguy's motion with respect to the underlying charge of uttering, a fifth degree felony. Thereafter, the parties submitted written closing arguments. On November 6, 2007, the trial court issued its judgment finding Lunguy guilty of uttering, a fifth degree felony.
 {¶ 10} On December 10, 2007, the trial court sentenced Lunguy to four years community control and ten days in jail. Lunguy was further ordered to: maintain employment; participate and successfully complete counseling; complete 100 hours of community service; return any documents pertaining to Oehlhof to *Page 5 
the probation department; and comply with the probation department rules and regulations. On December 12, 2007, the trial court granted Lunguy's motion for work release.
 {¶ 11} On January 10, 2008, Lunguy, through appointed counsel, filed an appeal to this Court asserting one assignment of error. On April 11, 2008, Lunguy, pro-se, filed a motion to certify a conflict between he and his appellate counsel, which this Court denied. On May 8, 2008, Lunguy, pro-se, filed a supplemental brief with this Court alleging ineffective assistance of appellate counsel and the denial of his right to a fair and impartial trial. In the interests of justice, this Court will address the assignments of error raised by both appellate counsel and Lunguy, pro-se. We begin our analysis with appellate counsel's arguments.
 APPELLATE COUNSEL'S ASSIGNMENT OF ERROR "THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL AND A FAIR TRIAL." {¶ 12} Appellate counsel asserts that Lunguy was denied effective assistance of trial counsel and, thereby, a fair trial. In support of this assertion, appellate counsel points to the fact that trial counsel failed to submit several documents into evidence, which, by their dates, would have indicated that no fraud occurred. Specifically, appellate counsel argues that the documents would have shown that the merchant account was already in existence; and therefore, any *Page 6 
signature on the subsequent merchant processing agreement, whether forged or genuine, did not fraudulently obtain the bank's services. The State, on the other hand, argues that this theory of the case was not pursued at trial and is not supported by the evidence presented at trial. Furthermore, the State contends that trial counsel's theory of the case was a sound trial strategy; and therefore, not ineffective assistance. We agree with the State.
 {¶ 13} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. State v. Kole (2001), 92 Ohio St.3d 303, 306,750 N.E.2d 148, citing Strickland v. Washington (1984), 466 U.S. 668,687, 104 S.Ct. 2052, 80 L.Ed.2d 674. In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. Strickland, 466 U.S. at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675, 693 N.E.2d 267. Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558,651 N.E.2d 965. Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. See State v.Bradley (1989), *Page 7 42 Ohio St. 3d 136, 141-142, 538 N.E.2d 373, quoting State v. Lytle (1976),48 Ohio St.2d 391, 396, 358 N.E.2d 623.
 {¶ 14} Trial counsel's theory of the case sub judice was that Oehlhof signed the merchant processing application, or that Lunguy signed the application with Oehlhof s express oral and written authorization; therefore, no fraud was committed; and therefore, no uttering was committed. Appellate counsel now offers a new theory of the case not presented at trial. However, "[a]s a reviewing court, it is not our duty to second-guess the strategy employed or the theory of the case advanced by the respective parties or their counsel. It is elementary that `the theory upon which a case is tried in the lower court must generally be adhered to on review."' Kraft Constr. Co. v. Cuyahoga Cty. Bd. ofCommrs. (1998), 128 Ohio App.3d 33, 46, 713 N.E.2d 1075. We decline to speculate with appellate counsel on the merits of this new proposed theory. Furthermore, trial counsel's theory of the case is an essential part of his/her trial strategy. See e.g. State v. Wiley, 10th Dist. No. 03AP-340, 2004-Ohio-1008, ¶¶ 21, 26. Trial strategies, even if unsuccessful, generally do not constitute ineffective assistance of counsel. Carter, 72 Ohio St.3d at 558; Bradley,42 Ohio St. 3d at 141-142, quoting Lytle, 48 Ohio St.2d at 396.
 {¶ 15} We also cannot conclude that trial counsel's performance in this matter "fell [outside] the wide range of reasonable professional assistance." Sallie, 81 Ohio St.3d at 675. Trial counsel extensively cross-examined Oehlhof, the *Page 8 
victim, on the business relationship between himself and Lunguy. Oehlhof admitted to lending Lunguy approximately $55,000 in consideration for three promissory notes executed payable to him for this amount plus interest, though he denied signing the notes. (Oct. 11, 2007 Tr. at 21-26). Oehlhof also admitted that he authorized Lunguy to use several of his credit cards, including a Discover card and a Home Depot card. (Id. at 14, 43, 47). Oehlhof further testified that the business relationship between him and Lunguy changed from creditor/debtor to a fifty-fifty partnership. (Id. at 56).
 {¶ 16} Trial counsel presented the testimony of defendant as well. Lunguy testified that Oehlhof signed the promissory notes and that either Oehlhof signed the merchant agreement or he signed it with Oehlhof s permission. (Oct. 18, 2007 Tr. at 48, 50, 62-63). Lunguy also confirmed that Oehlhof cancelled the promissory notes to become a fifty-fifty partner in the business. (Id. at 52, 67). Lunguy testified that Oehlhof signed a corporate authorization resolution giving him authority to establish business accounts. (Id. at 53; Defendant's Ex. G). Furthermore, Lunguy testified that Oehlhof executed a written power of attorney authorizing him to sign contracts on Oehlhof s behalf, which trial counsel presented into evidence. (Id. at 69; Defendant's Ex. F). Finally, Lunguy testified that Oehlhof authorized him to use several of his personal credit cards as well. (Id. at 82; Defendant's Ex. J). *Page 9 
 {¶ 17} Based upon the foregoing, we cannot conclude that trial counsel was ineffective. Trial counsel rebutted the victim's testimony through cross-examination, Lunguy's testimony, and several exhibits. Although trial counsel was ultimately unsuccessful in persuading the trier of fact that Lunguy was truthful and acting in good faith, this does not,ipso facto, mean that his services were ineffective. Carter,72 Ohio St.3d at 558; Bradley, 42 Ohio St. 3d at 141-142, quotingLytle, 48 Ohio St.2d at 396.
 {¶ 18} Appellate counsel's assignment of error is, therefore, overruled.
 LUNGUY'S PRO-SE ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED IN OVERRULING HIS CRIM.R. 29 MOTION.
 LUNGUY'S PRO-SE ASSIGNMENT OF ERROR NO. II THE EVIDENCE IS INSUFFICIENT TO SUSTAIN HIS CONVICTION.
 {¶ 19} In his first assignment of error,[1] Lunguy argues that the trial court erred in overruling his Crim. R. 29 motion because: (1) the trial court assumed facts not in evidence; (2) even if the victim's signature was forged, as alleged, no crime occurred because the contract was void and not legally binding for the victim; and (3) there was no economic loss to the victim; and therefore, no crime. In support of his second assignment of error, Lunguy asserts that "all the evidence *Page 10 
proved [he] is [f]actually and actually innocent of any charge criminally, civil and or morally." We disagree.
 {¶ 20} Crim. R. 29(A) provides:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction for such offense or offenses.
"Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v.Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus. This court has previously found that the Bridgeman standard "must be viewed in light of the sufficiency of evidence test * * *." State v.Foster (Sept. 17, 1997), 3d Dist. No. 13-97-09, at *2.
 {¶ 21} When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 22} As an initial matter, Lunguy argues in his brief to this Court that his appellate counsel was ineffective. This claim, however, is not yet ripe for review as the appeal is currently pending. See e.g.State v. Walker, 8th Dist. No. 87677, *Page 11 2007-Ohio-2917, ¶ 4, citing App. R. 26(B)(1) ("Obviously, App. R. 26(B) reopening is only appropriate after the court of appeals has entered judgment on the direct appeal."). Accordingly, this Court will treat Lunguy's brief as a true supplemental brief, not an App. R. 26(B) motion, and address the additional assignments of error raised. Since both Lunguy's assignments are reviewed under the same "sufficiency of the evidence" standard, we have combined them for analysis.
 {¶ 23} Lunguy was convicted of one count of uttering in violation of R.C. 2913.31(A)(3), a fifth degree felony. (Nov. 6, 2007 JE at 6). R.C. 2913.31(A)(3) provides:
 (A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
 (3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged.
R.C. 2913.31(C)(1)(b)(i) provides, in pertinent part:
 (b) Except as otherwise provided in this division or division (C)(1)(c) of this section, forgery is a felony of the fifth degree. If property or services are involved in the offense or the victim suffers a loss, forgery is one of the following:
 (i) If the value of the property or services or the loss to the victim is five thousand dollars or more and is less than one hundred thousand dollars, a felony of the fourth degree;
 {¶ 24} Lunguy's arguments lack merit. There is nothing in the record to support his allegation that the trial court assumed facts not in evidence. Lunguy *Page 12 
appears to argue that the trial court's partial grant of his Crim. R. 29 motion in effect amended the evidence to fit a crime. Lunguy argues that because the victim suffered no economic loss, he committed no crime. The fact of the matter is that the trial court granted Lunguy's Crim. R. 29 motion, in part, finding that the State failed to show that the loss suffered was five thousand dollars or more as required by R.C. 2913.31(C)(1)(b)(i)'s enhancement provision. (Nov. 6, 2007 JE at 1-2); (Oct. 18, 2007 Tr. at 36-37). However, the trial court found that the elements of the substantive crime of uttering were proven beyond a reasonable doubt, and, pursuant to R.C. 2913.31(C)(1)(b), this constituted a fifth degree felony. The fact that the State failed to prove an amount of loss over five thousand dollars does not, as Lunguy argues, mean that no crime was committed; rather, it simply means that the offense is lower in degree — a fifth degree felony instead of the originally charged fourth degree felony. As such, Lunguy's argument is without merit.
 {¶ 25} The trial court also heard evidence from which a rational trier of fact could conclude that all the elements of uttering were proven beyond a reasonable doubt. Thus, there was sufficient evidence to support Lunguy's conviction, and the trial court did not err in overruling Lunguy's Crim. R. 29 motion.
 {¶ 26} Lunguy testified that either Oehlhof signed the merchant processing application or he signed it with Oehlhof s authorization. (Oct. 18, 2007 Tr. at 62). Lunguy also testified that he had authority to open accounts on Oehlhof s behalf for their business because of the corporate authorization resolution and a power of *Page 13 
attorney. (Id. at 54, 69-71). On the other hand, Officer Bishop of the Lima Police Department testified that, during an interview with law enforcement, Lunguy admitted he signed the merchant processing application. (Id. at 5). Lunguy told Officer Bishop that he had authority to sign the document by virtue of the power of attorney. (Id.). Officer Bishop asked Lunguy to provide him with a copy of the power of attorney, but Lunguy never supplied one to the police department even though Officer Bishop contacted him several times. (Id. at 6-7).
 {¶ 27} Gene Kutsovsky, a Huntington Bank employee responsible for establishing merchant accounts, testified that he helped Lunguy fill out the merchant processing application. (Oct. 11, 2007 Tr. at 78, 80). Kutsovsky testified that when the application was almost complete, he asked Lunguy about his credit. (Id. at 80). Lunguy stated, "Well, my credit is not that good," which Kutsovsky indicated would be a problem because the credit card companies have strict rules. (Id.). At that point, Lunguy told Kutsovsky that he had a partner, Oehlhof, who had good credit and could sign for the account. (Id. at 81). Lunguy made a phone call and told Kutsovsky that he would return with Oehlhof s signature. (Id.). Less than an hour later, Lunguy returned to the bank with the paperwork purportedly signed by Oehlhof. (Id. at 83).
 {¶ 28} Oehlhof testified that he never knew about or signed the merchant processing application. (Id. at 11, 14, 33). He also testified that when he asked Lunguy about the application, Lunguy admitted that he signed the application. (Id. *Page 14 
at 10). Furthermore, Oehlhof denied ever signing a power of attorney or any corporate authorization resolution giving Lunguy permission to execute contracts on his behalf. (Id. at 38, 41); (Oct. 18, 2007 Tr. Vol. II at 45). Oehlhof did acknowledge that he authorized Lunguy to use some of his credit cards to pay business-related expenses. (Oct. 11, 2007 Tr. at 43-47).
 {¶ 29} David Hall, a BCI document analyst, testified that he compared the question signature on the purported power of attorney to writing samples from Oehlhof. (Oct. 18, 2007 Tr. Vol. II at 3, 7-8, 11). Hall determined that the signature on the power of attorney purporting to be that of Oehlhof was probably not written by Oehlhof. (Id. at 11-12). Hall also testified that he compared the questioned signature on the power of attorney with Lunguy's writing sample, and that the comparison results "tends to neither identify now [sic] eliminate him as being the writer of the above Paul Oehlhof questioned signature." (Id. at 19-20).
 {¶ 30} After reviewing the evidence in this case, we conclude that a rational trier of fact could find that Lunguy acted either "with purpose to defraud" or "knowing that [he was] facilitating a fraud" by fabricating Oehlhof s signature on the merchant processing application and uttering it to Huntington bank for the purpose of obtaining a merchant account. While it is certainly true that the testimony of Lunguy and Oehlhof was conflicting, credibility of witnesses is determined by the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 231, 227 N.E.2d 212. In its judgment entry, the trial court stated: *Page 15 
 After considering all of the testimony and weighing the credibility of the witnesses, the Court finds that the evidence proves beyond a reasonable doubt that the victim, Paul Oelhof [sic] did not sign either State's Exhibit 1, the Merchant's Processing Application or Defendant's Exhibit F, the Special Power of Attorney. There is no credible evidence that Oelhof [sic] signed either document. The only believable evidence was that Oehlof [sic] did not sign the forms.
Aside from direct evidence, the trial court had a substantial amount of circumstantial evidence from which it could rationally conclude that Lunguy committed the crime of uttering. Under these circumstances, we cannot say the trial court erred in denying Lunguy's Crim. R. 29 motion as the evidence was sufficient to sustain his conviction.
 {¶ 31} Lunguy's first and second assignments of error are, therefore, overruled.
 {¶ 32} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J., and WILLAMOWSKI, J., concur.
[1] Although Lunguy did not use the specific nomenclature "assignment of error," this Court, in the interests of justice, has drafted assignments of error based on his arguments. *Page 1