[Cite as *State v. Hampton*, 2011-Ohio-171.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO. 1-10-58

    v.

ANTOINE C. HAMPTON,                O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2010 0047

Judgment Affirmed

Date of Decision: January 18, 2011

APPEARANCES:

    *Michael J. Short* for Appellant

    *Jana E. Emerick* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Antoine C. Hampton (hereinafter "Hampton"), appeals the Allen County Court of Common Pleas' judgment denying his motion to withdraw his guilty pleas. We affirm.

{¶2} On February 3, 2010, an unidentified caller phoned 9-1-1 emergency but was not on the phone line, so the 9-1-1 operator kept the phone line open and traced the phone call, while the phone call was being recorded. (State's Exs. 1&2). A female and male were heard arguing during the phone call. (Id.). After several minutes, the altercation turned physical, and the female began to scream and cry. (Id.). After tracing the call, law enforcement reported to the house of Alicia Gonzalez, Hampton's girlfriend and the mother of his children, and found Hampton hiding in the basement.

{¶3} On February 17, 2010, the Allen County Grand Jury indicted Hampton on count one of domestic violence in violation of R.C. 2919.25(A) & (D)(4), a third degree felony; count two of aggravated burglary in violation of R.C. 2911.11(A)(1), a first degree felony; and count three of intimidation of a victim in violation of R.C. 2921.04(B). (Doc. No. 2).

{¶4} On February 23, 2010, Hampton appeared for arraignment, entered pleas of not guilty, and was appointed trial counsel. (Doc. Nos. 4, 5, 12-13). A jury trial was scheduled for April 27, 2010. (Doc. No. 16).

{¶5} On April 20, 2010, Hampton filed a motion to exclude from the trial certain photographs he believed were prejudicial. (Doc. No. 20). On May 19, 2010, the State filed a motion to continue the trial due to the unavailability of a key witness. (Doc. No. 21). On May 20, 2010, the trial court held a hearing on the pending motions. (Doc. No. 23). Prior to the hearing, Hampton withdrew his motion to exclude the photographs, and, thereafter, the trial court granted the State's request to continue the trial. (Id.). The jury trial was rescheduled for June 8, 2010. (Id.).

{¶6} On June 8, 2010, the day of trial, Hampton decided to forgo trial and to plead guilty to all three counts of the indictment. (June 8, 2010 Tr. at 1-2); (Doc. Nos. 40-41). After conducting a Crim.R. 11 inquiry, the trial court accepted Hampton's pleas of guilty and entered convictions on the three counts. (June 8, 2010 Tr. at 23); (Doc. No. 41). The trial court ordered a pre-sentence investigation (PSI) report and scheduled sentencing for July 19, 2010. (Doc. No. 41).

{¶7} On July 12, 2010, Hampton, pro se, filed a motion to withdraw his previously tendered pleas of guilty based on alleged ineffective assistance of trial counsel. (Doc. No. 44). On July 13, 2010, the trial court allowed Hampton's trial counsel to withdraw and appointed Hampton new trial counsel. (Doc. No. 47).

{¶8}   On July 21, 2010, Hampton filed an amended motion to withdraw. (Doc. No. 51).  On August 3, 2010, the State filed a response to the motion. (Doc. No. 58).  On August 5, 2010, the matter proceeded to a hearing, and, on August 6, 2010, the trial court denied Hampton's motion. (Doc. No. 60).

{¶9}   On August 16, 2010, the trial court sentenced Hampton to five (5) years on each count. (Doc. No. 64).  The trial court further ordered that the term imposed in count three be served concurrently to the term imposed in count one, and the term imposed in count two be served consecutively to the terms imposed in counts one and three, for a total sentence of ten (10) years imprisonment. (Doc. No. 64).

{¶10} On August 23, 2010, Hampton, pro se, filed a notice of appeal. (Doc. No. 68).  On August 24, 2010, the trial court appointed appellate counsel. (Doc. No. 69).  Hampton now appeals raising one assignment of error for our review.

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S PRE-SENTENCE MOTION TO WITHDRAW HIS GUILTY PLEA.**

{¶11} In his sole assignment of error, Hampton argues that the trial court erred by denying his pre-sentence motion to withdraw his guilty pleas. Specifically, Hampton argues that he entered his pleas of guilty based upon trial counsel's ineffective representation.  Hampton argues that his trial counsel was

ineffective by failing to share discovery with him, failing to file a witness list or subpoena witnesses, failing to investigate possible defenses, and by threatening him. Hampton argues that he had a meritorious defense to the aggravated burglary charge since he was living at the residence. He further argues that he filed the motion timely, and that the State has failed to show potential prejudice if the motion was granted.

{¶12} Crim.R. 32.1 provides that a defendant may file a pre-sentence motion to withdraw a guilty plea. The general rule is that a trial court should freely grant such a motion. *State v. Xie* (1992), 62 Ohio St.3d 521, 526, 584 N.E.2d 715. However, a defendant does not maintain an absolute right to withdraw his plea prior to sentencing. Id., paragraph one of the syllabus. Instead, a trial court must hold a hearing to determine whether a "reasonable and legitimate basis" exists to allow a defendant to do so. Id. Nevertheless, a trial court maintains discretion in deciding whether to grant or deny a defendant's pre-sentence motion to withdraw. Id., paragraph two of the syllabus. As such, we will not overturn the trial court's decision absent an abuse of its discretion. An abuse of discretion is more than an error of judgment; it suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157-58, 404 N.E.2d 144.

{¶13} We consider several factors when reviewing a trial court's decision on a pre-sentence motion to withdraw. Those factors include: (1) whether the withdrawal will prejudice the prosecution; (2) the representation afforded to the defendant; (3) the extent of the Crim.R. 11 hearing; (4) the extent of the motion to withdraw hearing; (5) whether the trial court gave full and fair consideration of the motion; (6) whether the timing of the motion was reasonable; (7) the stated reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charges. *State v. Liles*, 3d Dist. No. 1-10-28, 2010-Ohio-5799, ¶16, citing *State v. Griffin* (2001), 141 Ohio App.3d 551, 554, 752 N.E.2d 310.

{¶14} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole* (2001), 92 Ohio St.3d 303, 306, 750 N.E.2d 148, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. To establish prejudice when ineffective assistance of counsel relates to a guilty plea, a defendant must show there is a reasonable probability that but for counsel's deficient or unreasonable performance the defendant would not have pled guilty.

*Xie*, 62 Ohio St.3d at 524, citing *Hill v. Lockhart* (1985), 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.E.2d 203; *Strickland*, 466 U.S. at 687.

{¶15} Hampton's motion to withdraw was filed thirty-four (34) days after his change of plea. (June 8, 2010 Tr. at 1-2); (Doc. Nos. 40-41, 44). The trial court found that Hampton's delay in filing the motion to withdraw would prejudice the State since the crime had occurred several months ago. (Aug. 6, 2010 JE, Doc. No. 60). Prior to accepting Hampton's guilty pleas, the trial court conducted a thorough Crim.R. 11 change of plea hearing, explaining the possible terms of imprisonment, penalties, restitution, court costs, as well as post-release control and the possibility of judicial release. (June 8, 2010 Tr. at 5-15). The trial court also explained Hampton's right to trial, provided him with the opportunity to ask questions, and confirmed that he was pleading knowingly, voluntarily, and intelligently. (Id. at 16-22). When asked, Hampton repeatedly stated that he understood the information conveyed by the trial court. (Id. at *passim*).

{¶16} Hampton's motion to withdraw was premised upon ineffective assistance of trial counsel. Hampton alleged that trial counsel failed to share discovery with him, failed to file a witness list or subpoena witnesses, failed to investigate possible defenses, and threatened him. The trial court provided Hampton with a full hearing at which Hampton testified as well as his trial counsel, pursuant to a subpoena. (Aug. 5, 2010 Tr. at 3, 15-17). Trial counsel

testified that he shared the entire contents of discovery with Hampton. (Id. at 19). Trial counsel testified that he discussed possible defenses with Hampton, but that he advised Hampton to seek a plea deal given the likelihood that Hampton would be found guilty and to lessen Hampton's exposure to possible prison time. (Id. at 21, 23-25). Trial counsel testified that he spoke with Hampton four or five (4 or 5) times prior to the change of plea hearing. (Id. at 20). Trial counsel testified that he attempted to contact Hampton's brother, who Hampton indicated was a possible witness, but he was ultimately unable to contact the brother. (Id. at 32). Hampton's other brother knew nothing about the case, according to trial counsel. (Id.). Trial counsel testified that the only time he "threatened" Hampton was when he refused to file documents in court that were untruthful, which would have resulted in unethical conduct on his part. (Id. at 27). Trial counsel testified that Hampton wanted him to file a motion alleging that he was a racist, was having an affair with the prosecutor, and that he had forged documents and signatures, all of which trial counsel denied. (Id.). Since trial counsel refused to file such a motion, Hampton made a pro se motion making these allegations, which Hampton ultimately withdrew for lack of evidence. (Id.).

{¶17} As an initial matter, we cannot find that trial counsel's service was deficient or unreasonable under the circumstances. Trial counsel met with Hampton several times, shared discovery with him, informed him of possible

defenses, attempted to contact witnesses, and advised him to seek a plea agreement. *Even if* trial counsel rendered ineffective assistance, Hampton has failed to demonstrate prejudice; namely, that he would not have pled guilty but for counsel's ineffective performance. *Xie*, 62 Ohio St.3d at 524, citing *Hill*, 474 U.S. at 59; *Strickland*, 466 U.S. at 687. In fact, even though Hampton pled guilty to all three counts of the indictment, including a first degree felony, the trial court agreed to sentence Hampton to no more than if he had pled guilty to only two third degree felonies, which was consistent with the State's original plea offer that Hampton had rejected. (June 8, 2010 Tr. at 1-4, 6, 8, 31). Although Hampton was facing twenty (20) years incarceration, the trial court ultimately sentenced him to a total of only ten (10) years. (Id. at 8); (Aug. 16, 2010 JE, Doc. No. 64). Under these circumstances, we cannot find that Hampton would not have pled guilty but for counsel's alleged ineffective assistance.

{¶18} The record also fails to support Hampton's claim of innocence or of having a complete defense. In an attempt to establish a defense to the aggravated burglary charge, Hampton testified that he was living at the residence at the time of the indicted acts. (Aug. 5, 2010 Tr. at 7-10). Hampton testified that, when he arrived at the house, he suspected foul play because the curtain normally covering the front door window was not pulled closed, and he saw their small dog jumping

up and down barking in the window. (Id. at 9). When asked why he did not use his keys to enter the house, however, Hampton testified:

> **[b]ecause I didn't want to alert whoever- - I may [sic] thought was in the house at the time cause I seen the glass. Once I looked in there, I didn't want to alert nobody because I knew, you know, it was gonna, you know, I wanted to get in there and make sure everybody was safe in the house.**

(Id.). Hampton's testimony suggests that the window to the house was already broken when he arrived. However, during the recorded 9-1-1 Gonzalez screamed at Hampton asking him why *he* broke the window. (State's Exs. 1&2). Hampton also admitted to law enforcement that he was living "pretty much here and there" after having a physical altercation with Gonzalez earlier in January of 2010, which contradicts his testimony at the hearing. (State's Discovery Response, Doc. No. 15). Furthermore, the record contains messages and a letter from Hampton to the victim urging the victim to drop the domestic violence charges against him and to not testify against him. (Id.). The record contains judgment entries of Hampton's four prior domestic violence convictions for purposes of the felony domestic violence charge in count one of the indictment. (Id.). The record also contains photographs of Gonzalez's injuries, the door's broken glass, and turned over items in the house indicative of a physical struggle. (Id.).

{¶19} After reviewing the record in light of the factors outlined in *Griffin*, supra, we conclude that the trial court did not abuse its discretion by denying

Hampton's motion to withdraw his guilty pleas. Hampton's assignment of error is, therefore, overruled.

**{¶20}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**