[Cite as *State v. Scott*, 2022-Ohio-2723.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,               CASE NO. 17-21-10

     v.

JOSHUA L. SCOTT,                   O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Shelby County Common Pleas Court
Trial Court No. 19CR000251

**Judgment Affirmed**

**Date of Decision: August 8, 2022**

APPEARANCES:

     *Victoria Bader* **for Appellant**

     *Timothy S. Sell* **for Appellee**

Case No. 17-21-10

**SHAW, J.**

{¶1} Defendant-appellant, Joshua Scott ("Scott"), brings this appeal from the April 30, 2021 judgment of the Shelby County Common Pleas Court sentencing him to an aggregate 14-year prison term after Scott was convicted by a jury of two counts of rape. On appeal, Scott argues that his convictions were against the manifest weight of the evidence, that the prosecutor committed misconduct during closing arguments, and that he received ineffective assistance of counsel.

*Background*

{¶2} On August 29, 2019, Scott was indicted for two counts of rape in violation of R.C. 2907.02(A)(2), both felonies of the first degree.[1] It was alleged that Scott forcibly engaged in sexual conduct with his juvenile sister-in-law on two occasions several years prior.

{¶3} Scott pled not guilty to the charges and proceeded to a jury trial wherein he was convicted of both counts of rape. Prior to sentencing, Scott filed a motion for a new trial arguing that the State committed prosecutorial misconduct in closing arguments by implying that Scott had a burden to rebut the State's evidence. The trial court filed a written journal entry overruling the motion, determining, *inter alia*, that as soon as a comment was made by the prosecutor in closing arguments regarding the "unchallenged" and "unrebutted" testimony of the victim, the trial

---

[1] Scott was also initially indicted for two counts of gross sexual imposition; however, those counts were eventually dismissed by the State and we will not further address them. (Doc. No. 200).

court provided a curative instruction to the jury indicating that Scott did not have any burden in this case and that the State had the burden to establish that the crimes were proven beyond a reasonable doubt.

{¶4} On April 30, 2021, Scott was sentenced to serve 7-year prison terms on each count, consecutive to each other, for an aggregate 14-year prison term. It is from this judgment that Scott appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**Mr. Scott's convictions for rape were against the manifest weight of the evidence.**

**Assignment of Error No. 2**
**Mr. Scott was denied his right to a fair trial when the state committed prosecutorial misconduct during closing arguments.**

**Assignment of Error No. 3**
**Joshua Scott was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution.**

*First Assignment of Error*

{¶5} In his first assignment of error, Scott argues that his convictions were against the manifest weight of the evidence.

Standard of Review

{¶6} In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing

so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*.

**{¶7}** Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

Controlling Statute

**{¶8}** Scott was convicted of two counts of rape in violation of R.C. 2907.02(A)(2), which reads: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

Evidence Presented

**{¶9}** H.Y. testified that she was born in April of 1992, making her 28 years old at the time of trial. She had two children, she was married, and she was a stay-at-home mother.

**{¶10}** H.Y. testified that Scott had previously been married to H.Y.'s older sister. The exact length of the marriage between Scott and H.Y.'s older sister is unclear from record; however, through H.Y.'s testimony it is clear that Scott and H.Y.'s older sister were in a relationship during H.Y.'s early teenage years.

**{¶11}** According to H.Y., in the winter of 2004, H.Y. was "kicked out" of her house by her stepmother, so she went to live with her older sister and Scott in Tennessee. However, less than a year later, H.Y. moved back to Sidney, Ohio with her parents. Within six months to a year after H.Y. returned to Sidney, H.Y.'s older sister and Scott also moved to Sidney.

**{¶12}** H.Y. testified that she would occasionally babysit for her older sister and Scott in Sidney. H.Y. testified that one day she was walking home from school with her brother and her friends when Scott picked her up and said that she had to watch his child while H.Y.'s older sister and Scott were at work. However, H.Y. testified that Scott actually took her to his apartment in Sidney and that Scott "[p]ulled [her] pants down, put [her] on the couch, held [her] legs and [her] arms, and penetrated [her]" with his penis. (Tr. at 96-97). H.Y. testified that she was 13

or 14 years old at the time of the incident. She testified that she asked Scott to stop, that he pinned her arms and legs down, and that he had "intercourse" with her. (*Id.* at 97).

{¶13} H.Y. testified that Scott "finished" in a rag. She stated that Scott made her take the rag with her when they left the apartment, and that Scott had her throw the rag in a trashcan at a Speedway in Sidney.

{¶14} H.Y. testified that Scott threatened her, albeit not physically. She testified that her parents were "not the best with money, they needed help, and [Scott] and [her] sister helped a lot – a lot with that. He said he wouldn't help them anymore." (Tr. at 100). H.Y. also testified that Scott threatened to "beat up" H.Y.'s older sister if H.Y. did not cooperate.

{¶15} As to the second alleged rape, H.Y. testified that one day she was in the shower at her father's house when Scott came into the bathroom and also got into the shower. "He had grabbed me in the shower, played with my breasts, put his fingers in [my vagina]." (Tr. at 99). H.Y. testified that Scott then forced her to "give him head." (*Id.*) H.Y. testified that Scott left after he was finished and he was gone when she came out of the bathroom. H.Y. testified that she did not fight back because she "learned [her] lesson" that it "wasn't the first time, so [she] knew it wasn't gonna be the last[.]" (*Id.* at 100).

{¶16} H.Y. acknowledged that she initially provided different details regarding the bathroom incident than she told at trial. Regarding the differences, she stated that, "It happened more than once. Some of them kind of blur together." (Tr. at 101). However, she testified that what she described in the courtroom was what actually happened. Further, she testified that these two incidents were the only times Scott penetrated her vaginally.

{¶17} H.Y. then detailed her last interaction with Scott. She stated that she was babysitting her older sister and Scott's children while her sister and Scott were out drinking. H.Y. testified that when her sister and Scott returned home, H.Y. went to the kitchen to make her older sister coffee. At that time, Scott came into the kitchen, pinned H.Y. against the kitchen sink and started kissing her. H.Y.'s older sister came into the kitchen and saw Scott kissing H.Y. According to H.Y., her older sister started yelling and screaming. H.Y. then left the residence. H.Y. testified that she was approximately 15 years old at the time of the kitchen incident.

{¶18} H.Y. testified that she did not report the incidents when they occurred because "nobody was gonna believe me." (Tr. at 103). She further testified, "[m]y sister had her suspicions that things were going on and she had brought it to my parent's attention and they didn't want to look into it because she had children with him." (Id.) H.Y. testified that she only reported the incident when the police reached out to her to speak with her regarding an investigation.

{¶19} On cross-examination, H.Y. acknowledged that she did not tell her older sister about the alleged rape incidents when her older sister saw Scott kissing her in the kitchen. She also acknowledged that she never spoke to the police at all until the police came to her years later.

{¶20} On re-direct, H.Y. clarified that there were other times that Scott picked her up from school than the first rape incident. Further, she clarified that she did not tell her sister about the sexual assaults because she thought she would be considered a "home wrecker." (Tr. at 110). Finally, H.Y. testified she was afraid that her sister would "disown" her, and that she was afraid of Scott because he was "intimidating ." (*Id*. at 111).

{¶21} A detective who investigated the matter was the only other witness presented by the State. The detective testified that he was looking into a different investigative matter when he learned that H.Y. was possibly a victim of prior sexual abuse. He testified that he went to H.Y.'s residence and spoke with her and arranged an interview. The detective testified that H.Y. was upset during her interview and that her testimony at trial was largely consistent with what she told him during the interview.

{¶22} The detective also interviewed Scott and Scott "described [his] relationship [with H.Y.] as drunk nights and party nights." (Tr. at 115). The detective testified,

> **I asked him if something sexual in nature occurred between [Scott and H.Y.] and his word was eventually.  I asked him how many times he had a sexual relationship with her, and he says I believe once or twice.  I asked him what the age of [H.Y.] was during these sexual incidences and he said, to quote, if I'm not mistaken, but don't quote me, I want to say 18, but I was pretty intoxicated for a party.**

(*Id*. at 116).  The detective testified that he then asked Scott if he had ever forced a sexual encounter with H.Y. and Scott said that he did not, and that the sexual relationship was "actually her idea."  (*Id*.)

**{¶23}** The detective testified that no forensic work was done in this case because the alleged rapes occurred so long ago. However, he testified that in his experience delayed reporting of sexual assaults "occurs a lot."  (Tr. at 117).

**{¶24}** On cross-examination, the detective testified that Scott told him that Scott did not want his ex-wife to know about the sexual conduct until he had a chance to tell her himself. The detective also testified that his narrative report did not contain all the statements that he testified to because the report was just a summary synopsis of the recorded interview, which he listened to prior to the trial.

Analysis

**{¶25}** Scott argues on appeal that H.Y.'s testimony was not sufficiently credible to support his convictions for rape.[2]  He contends that the disclosures were

---

[2] Although he argues that his convictions are against the manifest weight of the evidence, Scott focuses his challenges on H.Y.'s credibility. He does not specifically make any arguments regarding any of the actual elements of the offenses.

made more than a decade after the offenses and that H.Y. did not disclose the offenses until law enforcement came to her, limiting her credibility. Further, he argues that since H.Y. acknowledged her testimony at trial was slightly different than what she told the detective initially, her testimony did not establish guilt beyond a reasonable doubt.

**{¶26}** Contrary to Scott's arguments, the jury found H.Y. credible and a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). The trier-of-fact may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

**{¶27}** Moreover, aside from the fact that the jury found H.Y. credible, the jury was also presented with the statements of Scott through the detective in this case. Scott acknowledged engaging in some sexual conduct with H.Y. "once or twice," which effectively corroborates the amount of times H.Y. testified that she had been vaginally penetrated by Scott. Thus while H.Y.'s credibility was pivotal in this case, it was not the only evidence before the jury.

**{¶28}** As the jury was in the best position to evaluate H.Y.'s testimony, we do not find that the jury clearly lost its way in this matter. *See State v. Whiteside*, 2d

Dist. Montgomery No. 19482, 2003-Ohio-3030, ¶ 27 (holding rape conviction was not against the weight of the evidence even though "minor and peripheral inconsistencies exist in some of the details of the accounts of the rapes that [the victim] gave to police as against her trial testimony, [because] the basic elements of her accounts remained the same."). For these reasons, Scott's first assignment of error is overruled.

*Second Assignment of Error*

**{¶29}** In his second assignment of error, Scott argues that the prosecutor committed misconduct during closing arguments. More specifically, he contends that the prosecutor improperly expressed his opinion regarding the victim's credibility, and that the prosecutor improperly implied that the defense had a burden to rebut the State's evidence.

Standard of Review

**{¶30}** "We review allegations of prosecutorial misconduct during closing arguments by asking 'whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" *State v. McAlpin*, --- Ohio St.3d ---, 2022-Ohio-1567, ¶ 156, quoting, *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). Although "criminal trials cannot be squeezed dry of all feeling," *State v. Keenan*, 66 Ohio St.3d 402, 409 (1993), "excessively emotional arguments tending to inflame the jury's sensibilities" are improper. *State v. Tibbetts*, 92 Ohio

St.3d 146, 168 (2001). However, "[t]he touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 155, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940 (1982).

**{¶31}** Notably, where Scott failed to object to a purportedly improper closing argument, he has forfeited all but plain error. *McAlpin* at ¶ 157. To establish plain error, Scott has to show that an error occurred, that the error was obvious, and that there is a "a reasonable *probability* that the error resulted in prejudice," meaning that the error affected the outcome of the trial. (Emphasis sic.) *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22.

Analysis

**{¶32}** In claiming that the prosecutor committed misconduct during closing arguments, Scott first contends that the prosecutor improperly expressed an opinion regarding H.Y.'s credibility in this matter. The statement he contends is improper is contained within the following passage:

> **So I'd also ask you as it relates to [H.Y.]'s testimony to consider that – that she's married. She has three children. These incidents were long past occurred. Technically they were – they were behind her. She had no – she had no reason to come forward and – and to cooperate with the detective. She had no reason coming to testify to you if – if what she says – says wasn't true. I mean, what would possibly be the rationale for her to subject herself to this sort of thing if – if it wasn't true?**

> **We'd also ask you to take a look at her – at her credibility. She had the guts to come in here and testify. She had to look at you and tell what happened to her. I'm – I'm quite certain that that would have been a very embarrassing thing for her to do and – and I'm sure it was traumatic for her.** *Yet she did it, and she did it in a believable fashion.*
>
> **She – she was able to provide you the surrounding facts. She was able to provide locations. She was able to provide detail. She was able to provide sequence of events that happened. This – this was not something that was made out of whole cloth. This was not some type of a cover-up. This was things that happened to her that she relayed to you.**

(Emphasis added.) (Tr. at 134-135).

{¶33} In his brief, Scott focuses on the prosecutor's italicized statement above that H.Y. "did it in a believable fashion," contending that by making this statement in closing arguments, the prosecutor effectively expressed his belief that H.Y. was credible. However, Scott's attempts to view this single comment in isolation, divorced from its context, which shows that the prosecutor was not personally vouching for H.Y. or expressing his own opinion on her credibility.

{¶34} It is important to emphasize the word choices of the prosecutor. The prosecutor did not state that H.Y. "is believable," he stated that H.Y. testified in a "believable *fashion*." As the passage in its entirety shows, prior to the prosecutor stating that H.Y. testified "in a believable fashion," the prosecutor listed reasons why H.Y. had little reason to come forward at all, let alone little reason to fabricate a story. Then, after the prosecutor stated that H.Y. testified in a "believable fashion,"

the prosecutor pointed to numerous details that H.Y. was able to provide despite the amount of years that had passed since the incidents occurred. Thus the surrounding circumstances show that the prosecutor was not expressing a personal opinion regarding H.Y.'s credibility, but rather emphasizing the circumstances surrounding her testimony and highlighting the lack of motive for her to lie, all of which he argues means the testimony should be considered to be objectively believable.

**{¶35}** The Supreme Court of Ohio has cautioned that "isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning" *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 94, citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868 (1974) ("a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."). Given the context surrounding the purportedly improper statement, we cannot find that the prosecutor committed misconduct.

**{¶36}** Furthermore, we emphasize that Scott did not object to the prosecutor's statement that H.Y. "did it in a believable fashion," and we would review the comment for plain error. Again, we find no error, but even if we did, the error would not be sufficient to meet the significant "plain error" threshold. Thus this argument is not well-taken.

**{¶37}** Next, Scott argues that the prosecutor committed misconduct in rebuttal closing argument by implying that Scott had a burden to rebut or otherwise challenge H.Y.'s testimony. The purportedly improper statements occurred during the following exchange, which was immediately followed by a curative instruction by the trial court.

> **Look, if you believe her, okay, if you believe her, what was she supposed to do at that age? If you don't believe her, you're gonna find him not guilty. But if you believe her, what was she supposed to do? She kept it – she tried to tell the parents, it didn't work. She was frightened of the man. She was afraid he might harm her sister and then finally, years later, [a] detective shows up on her doorstep and asks about it and she lets it come. And she – and she tells him.**
>
> **So, folks, this case all turns on the credibility of that one witness. Her testimony is unchallenged, it's unrebutted. If – her testimony, if you believe her, is the only evidence before you. It is, as a result, clear and convincing and I would ask you to return a verdict of guilty on Mr. Scott.**[3]
>
> **THE COURT: Counsel approach.**
>
> **(Off the record colloquy between Court and Counsel)**
>
> **THE COURT: Ladies and Gentlemen of the jury, I have a – just a cautionary instruction for you.**
>
> **You've heard some arguments of Counsel today, and I want to make it very clear to you. The defense has no obligation to**

---

[3] "Clear and convincing" has its own standard in the law, which is below the "beyond a reasonable doubt" required for a conviction. Thus by using wording that has its own specific legal meaning, the prosecutor can create serious issues and we strongly discourage it. Nevertheless, the jury was never instructed on a "clear and convincing" standard, only on a "beyond a reasonable doubt" standard, thus the jury had no basis for comparison. Furthermore, there was no objection to the language and there is no argument regarding it on appeal. We find no plain error due to the trial court's thorough instructions on the appropriate burden of proof and we will not further address the issue.

> **present any evidence at all. If – and so any suggestions by – by the Prosecution that – that there was no evidence in defense presented, that's not part of this case.**
>
> **As I will explain to you when I go through my general instructions here, this case is to – is to be decided by you based upon the evidence that is presented and the State has the burden of presenting all that evidence.**

(Tr. at 143-144).

**{¶38}** Scott contends that during the preceding statement, the prosecutor improperly implied that Scott had a burden to present evidence in this case. He argues that this second improper comment, coupled with the first that he felt was improper, deprived him of a fair trial.

**{¶39}** Again, we have not found that the first comment made by the prosecutor regarding H.Y. testifying in a "believable *fashion*" rises to the level of expressing an opinion in this matter, thus any subsequent purported misconduct during closing arguments cannot "compound" on the first comment.

**{¶40}** At the outset we would note that while it is undeniably true that Scott had no burden to present evidence in this case, he could have "rebutted" or "challenged" the State's evidence through cross-examination. Nevertheless, the trial court was evidently of the opinion, and we concur, that the prosecutor's statement could be construed as erroneously implying that Scott had a burden to rebut or challenge the State's evidence with defense evidence and perhaps even defense testimony. Because of this, the trial court *immediately* halted closing arguments and

then gave a curative instruction to the jury. There are no indications that the jury did not follow the trial court's instructions, and, in fact, a jury is presumed to follow the court's instructions. *State v. Garner*, 74 Ohio St.3d 49, 59, 1995-Ohio-168.

{¶41} Thus even accepting that the prosecutor made an improper implication, we cannot find that Scott was deprived of his right to a fair trial because the trial court *immediately* corrected the matter and there is simply no indication that the jury did not follow the court's instruction. Therefore, Scott's second assignment of error is overruled.

### *Third Assignment of Error*

{¶42} In his third assignment of error, Scott argues that he received ineffective assistance of counsel. Specifically, he contends that counsel was ineffective for failing to object to the prosecutor's comment discussed in the previous assignment of error that H.Y. testified in a "believable fashion."

### Standard of Review

{¶43} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided

competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689; *State v. Harris*, 3d Dist. Allen No. 1-21-30, 2021-Ohio-4559, ¶ 6.

Analysis

**{¶44}** We can find no ineffective assistance of counsel in this matter given that we have already determined the prosecutor's statement that H.Y. testified in a "believable *fashion*" did not constitute improper vouching when placed in its proper context. Moreover, even if it did, we cannot find that it impacted the trial as a whole. Therefore, Scott can meet neither prong of the *Strickland* test, and his third assignment of error is overruled.

*Conclusion*

**{¶45}** For the foregoing reasons, Scott's assignments of error are overruled and the judgment of the Shelby County Common Pleas Court is affirmed.

*Judgment Affirmed*

**MILLER and WILLAMOWSKI, J.J., concur.**

**/jlr**